# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01652-COA

**DERRICK NEWELL**                                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

DATE OF JUDGMENT:                08/13/2013
TRIAL JUDGE:                     HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED:       WALTHALL COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         WILL MCINTOSH
                                 DAVID I. MEGDELL
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: LISA L. BLOUNT
NATURE OF THE CASE:              CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:         DENIED MOTION FOR POST-
                                 CONVICTION RELIEF
DISPOSITION:                     AFFIRMED - 04/28/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     Derrick Newell was convicted in the Walthall County Circuit Court in 1998 for conspiracy to commit armed robbery. Immediately prior to his trial, Newell had been acquitted of the crimes of armed robbery, aiding and abetting, and accessory after the fact. Following his conviction, he was subsequently sentenced as a habitual offender to life in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of early release. He filed a motion for post-conviction relief (PCR) in 1999 which was denied by the circuit court. We affirmed the circuit court's judgment. Newell has now filed another

PCR motion, which was also denied by the circuit court. Aggrieved, he appeals. On appeal, Newell argues that his acquittal for the crimes involved in the actual robbery barred the State from indicting and prosecuting him for conspiracy to commit armed robbery under a double-jeopardy theory. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. This is not our first review of Newell's case. In 1999, we analyzed a motion for post-conviction relief in which Newell contested whether his right to due process was violated, whether hearsay was admitted, whether the verdict was against the overwhelming weight and sufficiency of the evidence, and whether he was improperly sentenced as a habitual offender. *Newell v. State*, 754 So. 2d 1261, 1263 (¶1) (Miss. Ct. App. 1999). There, we explained the events leading up to the appeal as follows:

> In September 1997, David Cooley was asleep in his home when two men clothed in black and wearing masks entered his bedroom and demanded money. When Cooley did not produce the money, one man put a gun in Cooley's mouth, and the other man put a gun to his chest [and] asked him to give up the money. Once the men completed the robbery, they fled from Cooley's house. The State presented evidence that Newell, Carlos Craft, and Temus Magee had formed a conspiracy to commit armed robbery against Cooley. The testimony showed that although Newell waited in the car while Craft and Magee committed the robbery, Newell knew that the robbery was being committed; he drove Craft and Magee away from the scene of the crime after the robbery had been committed, and he was given some of the proceeds from the crime. The defense presented testimony that Newell was not part of the armed robbery.

*Id.* at 1263 (¶2). Specifically, we noted:

> During the State's case-in-chief, Craft testified that he and Magee had discussed the robbery, and although Newell kept repeating that he wanted nothing to do with the robbery, Newell drove the car to Cooley's house, waited outside while Craft and Magee committed the robbery, and then drove the car

2

from Cooley's house after the robbery was committed. Craft testified that he was not sure of the amount but he thought that Newell got a cut of the money. Magee testified that Newell participated in the conversation about the armed robbery. He further stated that Newell would have participated in the actual crime, but did not only because Magee would not let him kill Cooley. Magee also testified that the proceeds were split evenly between all three men. Another witness for the State, Traneese Lee, testified that Magee, Craft, and Newell were all three present in her house having a conversation about robbing Cooley. She further testified that when the men left, Newell had possession of a gun.

*Id*. at 1265-66 (¶10).

¶3. After considering the witnesses' testimony, the jury returned a verdict finding Newell guilty of conspiracy to commit armed robbery. Newell was deemed a habitual offender. He was then sentenced to life in prison without the possibility of early release or parole.

¶4. Prior to Newell's trial for conspiracy to commit armed robbery, he was tried, along with Craft, for the crimes of armed robbery, aiding and abetting, and accessory after the fact. During that trial, several statements were made in front of the jury referencing conspiracy. Specifically, after Newell's counsel raised an objection to the admissibility of a statement made by Craft as a statement against Newell's interest and as hearsay, the circuit court judge stated the following:

> [T]he objection has been made that it is hearsay against . . . Newell. The State's [a]ttorney has stated that [the statement involves] . . . an act of [a] co-conspirator. I think the statement has met the requirements of the [Mississippi] Rules of Evidence, and I'm going to allow the statement to be presented to the [jury].

Newell's counsel again objected, and the circuit court judge reiterated the following: "I think that under the Rules of Evidence that the statement of a co-conspirator should be allowed; although a conspiracy is not charged, I think the fact that [Craft and Newell] were jointly

3

indicted for the same crime would suffice and meet that ruling . . . ."

¶5.     After the testimony and evidence was presented to the jury, Newell was found not guilty of armed robbery, aiding and abetting, and accessory after the fact. He filed a PCR motion in 1999 that was ultimately denied by the circuit court whose judgment was affirmed by this Court. Newell recently filed another PCR motion in the circuit court that was also denied. On appeal, Newell asserts that although he was not charged with conspiracy to commit armed robbery during the first trial, he was improperly indicted and tried for conspiracy to commit armed robbery based on the doctrines of double jeopardy and collateral estoppel.

## DISCUSSION

¶6.     The denial of post-conviction relief will not be reversed "absent a finding that the [circuit] court's decision was clearly erroneous." *Smith v. State,* 806 So. 2d 1148, 1150 (¶3) (Miss. Ct. App. 2002). Nonetheless, we review issues of law de novo. *Brown v. State,* 731 So. 2d 595, 598 (¶6) (Miss. 1999). On appeal, Newell asserts that his conviction of conspiracy to commit armed robbery is barred by both the doctrines of double jeopardy and collateral estoppel. Hence, we review his claim de novo and seek to determine whether the circuit court's denial of his PCR motion was clearly erroneous.

¶7.     This Court has stated that the Fifth Amendment's Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Brooks v. State*, 769 So. 2d 218, 224 (¶21) (Miss. Ct. App. 2000) (citation

4

omitted). When reviewing charges in multiple prosecutions for possible double-jeopardy violations, we have held that if "each offense contains an element not contained in the other," then double jeopardy does not apply. *Id.* (citation omitted).

¶8. The United States Supreme Court has determined that within the Double-Jeopardy Clause lies the doctrine of collateral estoppel. *See Ashe v. Swenson*, 397 U.S. 426, 443-46 (1970). Though often cited in tandem with double jeopardy, the Supreme Court clearly stated that collateral estoppel is not to be applied in a "hypertechnical sense." *Id*. at 444. Rather, in criminal cases, collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id*. at 443.

¶9. Newell cites to *Griffin v. State*, 545 So. 2d 729 (1989), in support of his argument that his conspiracy conviction violates double jeopardy. In *Griffin*, the Mississippi Supreme Court stated that "where there is a common nucleus of operative facts . . . and where the ultimate fact has been determined in the prior acquittal by a final judgment, a conspiracy trial is barred thereafter under the constitutional double[-]jeopardy provision." *Id*. at 730. In *Griffin*, Willie Griffin's brother, Melvin, had been indicted for a criminal offense and was awaiting trial. *Id*. at 731. The day before the trial, Melvin and Willie visited the home of their local mayor and asked him if he knew any names on a list of potential jurors in Melvin's trial. *Id*. When the mayor stated that he recognized one of the names, Melvin asked the mayor to persuade her to look out for Melvin while he was on trial. *Id*. During the conversation, Willie was in the room watching television but never participated in the

5

conversation. *Id*. Willie was was subsequently indicted for jury tampering and conspiracy to commit jury tampering. *Id*. After his acquittal for jury tampering and before the start of his trial for conspiracy to commit jury tampering, he filed a motion to dismiss the case for violation of the Double-Jeopardy Clause. *Id*. at 730. The circuit court denied the motion, and Willie filed an interlocutory appeal. *Id*. at 731.

¶10. The State's evidence in both of Willie's trials revolved around the single meeting at the mayor's house. *Id*. at 733. At the trial for jury tampering, "the State attempted to prove the offense by showing that Willie was present in [the mayor's] home when . . . Melvin[] attempted to enlist [the mayor] in influencing the juror." *Id*. In its analysis, the supreme court noted that "[b]y basing its evidence of Griffin's membership in a conspiracy upon his alleged attempt to tamper with [the] juror . . . the State seeks to have Griffin convicted of the exact conduct for which he has been acquitted." *Id*. at 734. Accordingly, the supreme court reversed and rendered the circuit court's denial of Willie's motion to dismiss. *Id*.

¶11. Five years later, the supreme court again addressed the application of double jeopardy and collateral estoppel to cases involving multiple trials for substantive offenses and conspiracy. *State v. Thomas*, 645 So. 2d 931 (Miss. 1994). Therein, Benny Thomas was indicted for burglary and conspiracy to commit burglary. *Id*. at 932. After being convicted of burglary, Thomas cited *Griffin* for the proposition that a subsequent trial for conspiracy to commit burglary was barred by double jeopardy. *Id*. at 932, 934. The circuit court agreed and the State appealed. *Id*. at 932.

¶12. The supreme court distinguished the facts in *Griffin* from Thomas's case in that "the

6

factual question necessary to convict [Griffin] of conspiracy to commit jury tampering was answered negatively by the jury." *Id*. at 934. The supreme court went on to clarify its holding in *Griffin* as follows:

> *Griffin* is factually specific. A person could be acquitted on the substantive charge and still be tried on the conspiracy charge as long as the jury did not decide in the substantive charge that there was no agreement to commit the crime. For instance, one could be acquitted on a burglary charge and still have agreed (conspired) to commit the crime. *Griffin* is limited to the facts of that case.

*Id*.

¶13. In the case at bar, the charges of armed robbery, aiding and abetting, and accessory after the fact were based on events occurring immediately prior to, during, and immediately after the robbery. The charge for conspiracy to commit armed robbery was based on a conversation that took place an entire day before the robbery occurred. This involved two separate factual questions occurring at separate times – one being whether or not Newell was part of the actual robbery and the other being whether Newell participated in the conversation where the men planned to rob the victim. This was not a single factual question presented to the jury that, once answered, was dispositive to the crime of conspiracy as was the case in *Griffin*.

¶14. Likewise, the elements present in armed robbery and conspiracy to commit armed robbery are not intertwined. Mississippi Code Annotated section 97-3-79 (Rev. 2014) defines armed robbery as a "tak[ing] or attempt[ing] to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly

7

weapon . . . ." Conspiracy occurs "[i]f two . . . or more persons conspire . . . [t]o commit a crime[.]" Miss. Code Ann. § 97-1-1(1)(a) (Rev. 2014). Again, the conversation relating to the future commission of the robbery and the actual robbery itself were two separate acts, and therefore, two separate findings of fact for which double jeopardy would not apply in theory.

¶15. Newell asserts, however, that the jury determined in the first trial the question of whether Newell participated in the conversation during which the men planned the robbery. In support thereof, Newell points to dialogue during the first trial in open court between the circuit judge and attorneys for both parties involving a challenge to the introduction of a statement made by Craft that Newell was with him several hours before the robbery. The following was stated:

> State: Your Honor, it is the State's contention that this statement is a statement against interest because [Craft has] alleged an alibi for the early morning hours of [the day of the robbery,] and it is a statement against interest because it places Carlos Craft at some place other than his home in the early morning hours of the day; furthermore, it is probative because it's circumstantial evidence because Carlos Craft is telling the officers that he, Derrick Newell, and Timos Magee were together in the early morning hours.
>
> . . . .
>
> Court: The objection made by the Defendant Newell to the statement, the objection has been made that it is hearsay against the Defendant Newell. The State's attorney has stated that it was an act of [a] co-conspirator. I think the statement has met the requirements of the Rules of Evidence, and I'm going to allow the statement to be presented to the jury.
>
> Defense: Object, your Honor. I will object to anything with respect to [Newell] that it's hearsay being offered for the truth of the matter, and also there has been no showing of common plan or

8

scheme for conspiracy that involved Mr. Newell . . . . [I]n addition to that, that Mr. Cooley, the victim, didn't even identify Mr. Newell. I think this would be irrelevant, his being involved in that part of it, whether he was or not somewhere at 2:30 in the morning.

. . . .

Court:     Well, a joint indictee is, I think it's one step above that of a joint conspirator, a co-conspirator, and I think that under the Rules of Evidence that the statement of a co-conspirator should be allowed; although a conspiracy is not charged, I think the fact that they were jointly indicted for the same crime would suffice and meet that ruling although this is a novel issue before this Court. . . . [T]he objection will be overruled.

Newell also notes that during closing arguments, the State told the jury that Newell and Craft "decided they would go and rob someone," and that the two men "decided on September 23, 1997, that they were going to go out to David Cooley's house and rob him . . . ."

¶16.    Prior to closing arguments, the circuit court instructed the jury. After instructing the jury as to impartiality, the duty to weigh the evidence, the presumption of innocence, and other general matters, the circuit court addressed the crimes for which Newell was charged and the determinations that the jury was to make. The instructions constituted the following:

> The [c]ourt instructs the jury that every person who shall aid or assist any felon, knowing that said such person has committed a felony with the intent to enable such felon to escape or avoid arrest, trial conviction, or punishment after the commission of such felony, is guilty of being an accessory after the fact. Therefore, if you, the jury, find that on or about September 23, 1997, within the jurisdiction of this [c]ourt[,] that Derrick Newell did aid and assist any felon in the armed robbery of David Cooley, then and only then may you find Derrick Newell guilty of being an accessory after the fact.
>
> . . . .
>
> The [c]ourt instructs the [j]ury that every person who aids, abets, assists, and

9

encourages another person in the commission of a crime is guilty as a principal to the crime, and [is] just as guilty as the person who actually commits the offense. Therefore, if you, the jury, find that on or about September 23, 1997, within the jurisdiction of this [c]ourt[,] . . . Derrick Newell did willfully, unlawfully, and feloniously give aid, assist, or [give] encouragement in [the] armed robbery against David Cooley, then you may find the defendant guilty of armed robbery. The [c]ourt instructs the jury that every person who shall feloniously attempt to take the personal property of another and against his will[,] by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon[,] shall be guilty of armed robbery.

. . . .

If you find from the evidence that, number one, Derrick Newell on or about September 23, 1997, two, willfully attempted to take the personal property of David Cooley[,] . . . three, in [his] presence, from [his] person, . . . four, against [his] will, five, by putting David Cooley . . . in fear of some immediate injury to [his] person, . . . six, by exhibiting a handgun, . . . seven, that such gun was a deadly weapon, and, eight, that at the time Derrick Newell had the intent to permanently deprive David Cooley . . . of the property, then you should find the defendant guilty as charged.

. . . .

The [c]ourt instructs the jury that a lesser included offense is a crime which includes some of the elements of the greater offense, but not all of them. In this case, you may consider the lesser included offense of accessory after the fact to armed robbery as to Derrick Newell in the event you cannot agree on the greater charge of armed robbery. If you find that the State has failed to prove beyond a reasonable doubt that Derrick Newell participated in the armed robbery and did not give aid, assistance, [or] encouragement to others before the armed robbery took place, but do find beyond a reasonable doubt that [he] either received some of the proceeds from the armed robbery, helped the principals avoid justice by giving false information to the authorities, or by assisting the perpetrators after the fact, knowing that such persons had committed the armed robbery, then you may find Derrick Newell guilty of the lesser included offense of accessory after the fact and should so indicate in the verdict form.

¶17.   It is clear that the jury was only asked to determine whether Newell was guilty of

10

armed robbery, aiding and abetting, and accessory after the fact. The jury was never told that conspiracy was alleged, and they were never presented with the elements of conspiracy or any evidence regarding the crime of conspiracy. The mention of the words "conspirator" and "conspiracy" were confined to one brief conversation during the three-day trial when the words were stated in passing. Even then, it was said during a very short oral analysis of the rules of evidence in a dialogue between the circuit judge and the attorneys in an effort to ascertain the admissibility of Craft's statement regarding Newell's whereabouts many hours prior to the robbery. During the circuit judge's analysis, there was no mention of the conversation wherein the men planned the robbery or of any robbery conspiracy involving Newell. Rather, the circuit judge was faced with a novel legal question regarding admissibility of evidence by a joint indictee. While the circuit judge had not faced this question before, it appears he had faced the question in terms of joint conspirators. Hence, the circuit judge talked through the answer to the question by passively comparing the situation, in terms of admissibility of a single statement only, to the rules of evidence governing joint conspirators.

¶18.    Again, the jury was never asked to determine whether Newell committed the crime of conspiracy. In reviewing Newell's PCR motion, the circuit judge noted this fact as well. At the hearing on the PCR motion, the circuit court acknowledged that the jury in the first trial determined "whether [Newell] was an aider or an abettor within the crime itself. [However,] [t]hey weren't framed the question of whether [Newell] was engaged in a conspiracy because . . . the issue was never framed for the jury to determine his guilt or lack

11

thereof as to the charge of conspiracy." We agree. Newell's contention that the crime of conspiracy to commit armed robbery was presented to the jury and subsequently dismissed by the jury in Newell's first trial such that double jeopardy and collateral estoppel would attach is unfounded. This issue is without merit.

¶19. **THE JUDGMENT OF THE WALTHALL COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALTHALL COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**